FOLEY *v.* DETROIT UNITED RAILWAY.

1. MASTER AND SERVANT — COMPROMISE AND SETTLEMENT — WORK-
   MEN'S COMPENSATION—CERTIORARI—AWARD—REOPENING.

   Where an injured servant entered into an agreement with
   his employer for compensation, approved by the Industrial
   Accident Board, and later it became evident that he had
   suffered more serious injuries than it was at first sup-
   posed, and he applied to the board to secure compensation
   for partial incapacity, the board was authorized to open
   the case, and, though the servant had executed, without
   securing its approval, a receipt in full for his damages or
   compensation, to make an additional award for the in-
   juries as developed subsequently to the compromise.  2
   Comp. Laws 1915, §§ 5458, 5459.

2. SAME—INDUSTRIAL ACCIDENT BOARD—ADDITIONAL AWARD.

   Evidence that claimant, at the time of hearing, had been
   able during his employment by defendant railway com-
   pany, after his injuries, to earn about as much as before,
   and that he had been employed at other labor after losing
   his position and had earned as much as he had prior to
   the accident, did not preclude the board from granting
   the additional award, under testimony of his earning ca-
   pacity.  2 Comp. Laws 1915, §§ 5440, 5441.

Certiorari to the Industrial Accident Board. Sub-
mitted January 18, 1916. (Docket No. 56.) Decided
March 30, 1916.

Petition by Patrick Foley for the reopening of peti-
tioner's claim for compensation against the Detroit
United Railway, and for further compensation. From
an order awarding further compensation respondent
brings certiorari. Affirmed.

*Corliss, Leete & Moody* and *Benj. S. Pagel,* for ap-
pellant.

*Beaumont, Smith & Harris* and *Albert E. Meder,*
for appellee.

STEERE, J. Appellant seeks by writ of certiorari to review and reverse an order, of the State Industrial Accident Board reopening claimant's case and awarding him additional compensation.

Claimant was employed by respondent as a motorman working ten hours per day at an average weekly wage of $16.25. On July 22, 1913, his car was in a collision which resulted in a compound fracture of his left leg above the ankle. He was at once taken to a hospital, and there remained until February 17, 1914. While there he was paid one-half his average weekly wages and provided with doctors, special nurses when needed, medicine, general hospital attendance, and his wants all supplied, at appellant's expense. When his condition became such that he said he was well enough to go back to work and desired to do so, he was discharged from the hospital. He testified that he was kept there until he recovered, and prior to his discharge he walked out for exercise, and "used to come downtown and walk around lots of times." He returned to work on February 22, 1914, as a watchman at one of respondent's car barns, receiving $2.50 per working day of nine hours each for seven days in the week, which amounted to more than the wages he had been receiving as a motorman prior to his injury. While he was yet in the hospital, on September 16, 1913, an agreement for compensation was entered into between him and appellant in accordance with provisions of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5458 *et seq.*), using a form of the Industrial Accident Board as follows:

"Agreement in Regard to Compensation.
"We, Patrick Foley, residing at city or town of Detroit, Michigan, and Detroit United Railway, have reached an agreement in regard to compensation for the injury sustained by said employee while in the employ of Detroit United Railway, 12 Woodward Ave., Detroit, Michigan, 8:50 p. m. July 22, 1913, Jefferson

and Cadillac Ave., Detroit, Michigan. Collided with car ahead when he ran his car too close to it. Leg broken.

"The terms of the agreement follow:

"$8.13 per week payable under act. Average weekly wage $16.25." [Duly dated, signed, and witnessed.]

This agreement was approved by the Industrial Accident Board on the following form:

"State of Michigan
"Industrial Accident Board
"Oakland Building
"Lansing

"Members of Board: John E. Kinnane, Chairman, Bay City; Richard L. Drake, Secretary; J. A. Kennedy, Sault Ste. Marie; Ora E. Reaves, Jackson.

"December 6, 1913.

"In re D. U. R.: PATRICK FOLEY.
"Detroit United Railway Co.,
"Detroit, Michigan.

"*Gentlemen:*

"The agreement in regard to compensation in the above case has been passed upon by the Industrial Accident Board and approved. Very truly yours,

"—————————,

"Secretary.

"Note: It is required by the Industrial Accident Board that receipts on account of compensation (Form No. 11) be taken when weekly payments are made, same to be submitted to the board monthly. A settlement receipt (Form No. 12) will be signed when last payment is made and will be accompanied by final report of accident (Form No. 7a). If above forms have already been submitted kindly disregard this clause."

On February 17, 1914, when claimant applied to return to work, he was paid in full the compensation then due him according to previous agreement and signed a receipt therefor, but he did not resume work until five days later, for which intervening time he was also paid on the basis of their agreement, after which he gave appellant a receipt in full, as follows:

"Settlement Receipt.

"Received of Detroit United Railway the sum of ($4.65) four dollars and sixty-five cents, making in all, with weekly payments already received by me, the total sum of ($248.55) two hundred forty-eight dollars and fifty-five cents, in settlement of compensation under the Michigan Workmen's Compensation Law, for all injuries received by me on or about the twenty-second day of February (July), 1914 (1913), while in the employ of Detroit United Railway, 12 Woodward Ave., Detroit, Michigan, subject to review and approval by the Industrial Accident Board.

"Witness my hand this 4th day of March, 1914.

"PATRICK FOLEY,
"242 Lycaste St.,
"Detroit Michigan.

"Witness: NELL S. MCDONALD, Detroit, Michigan.

"Being in addition to the settlement receipt signed by said Foley Feb. 17, 1914, he having been ready to work Feb. 18, but not actually starting to work until Feb. 22, 1914."

The $248.55 paid claimant for the intervening time between his injury and resuming work was clear to him and in addition to all expenses of his care and medical attendance which were assumed and paid by appellant.

On April 7, 1914, claimant filed a petition with the Industrial Accident Board, reciting briefly the facts of his injury, the compensation and care received until discharged from the hospital, his resumption of work as watchman for appellant, stated that in attempting to perform his duties in that capacity his leg became swollen at the end of the day's work and was so weak that he was unable to walk any great distance or be on his feet any great part of the day, and—

"that he has consulted an eminent physician in the city of Detroit, who states that while the results obtained by the Detroit United Railway's physician have been good, still the injured leg, as a result of the aforesaid injury, is now one-half inch shorter than the other leg, and that your petitioner will not be able to

follow any occupation in which it will be necessary for him to be on his feet any great portion of the day, or in which much walking or lifting is required."

For which reason he asked the board to adjudge him further compensation.

The return of the Industrial Accident Board to this writ of certiorari does not traverse nor deny the facts stated in appellant's affidavit on which the writ was allowed. It briefly states that claimant made application for a reopening of the case and an award of further compensation; that testimony was taken thereafter by deposition at the instance of both parties, after which a hearing was had on July 8, 1915, and the award complained of was made. "A resume of such testimony," copies of claimant's petition, and the order of said board, are attached to said return as exhibits and part of said return. Counsel for the respective parties also stipulated in writing to the same as "the return of said board," with exhibits attached to the affidavit for writ of certiorari considered as a part thereof. The material parts of those exhibits (three in number) are quoted above. No findings of fact or conclusions of law are returned, and, so far as shown, none were made or filed by the board.

Appellant's two principal contentions against the validity of this order are that the agreement between the parties after being approved by the board was "final and binding" under the statute and the board had no authority to reopen the case after claimant had signed a final settlement receipt in full, "in the absence of fraud, duress, or mistake being alleged and proven as a basis for such reopening," and—

"that there is no evidence in the record which would warrant an award to claimant of any further compensation as it is undisputed that at the time of the filing of the petition claimant was earning in respondent's employ in a shorter period of time, an amount

equal to if not greater than that earned by him prior to the accident."

The act clearly favors and contemplates an agreement between the parties as to compensation in case of an industrial accident and that the board in its supervisory control shall favor and approve such agreements when understandingly made, without fraud, duress, or undue advantage. Section 5, pt. 3 (2 Comp. Laws 1915, § 5458). An attempt to reach such an agreement is a prerequisite to an application to the board for an arbitration and award. Section 6, pt. 3 (2 Comp. Laws 1915, § 5459). It is questions arising under the act, "not settled by agreement," which the board is authorized to determine, except as otherwise provided. Section 16, pt. 3 (2 Comp. Laws 1915, § 5469). Section 14 of part 3 (2 Comp. Laws 1915, § 5467) provides:

"Any weekly payment under this act may be reviewed by the Industrial Accident Board at the request of the employer, or the insurance company carrying such risks, or the commissioner of insurance as the case may be, or the employee; and on such review it may be ended, diminished or increased, subject to the maximum and minimum amounts above provided, if the board finds that the facts warrant such action."

At the time the agreement in regard to compensation, which the board approved, was entered into, claimant was lying in the hospital totally incapacitated for work as the result of a compound fracture of his left leg sustained while in appellant's employ. Under section 9, pt. 2, of the act (2 Comp. Laws 1915, § 5439), he was entitled to receive from his employer one-half his weekly wages while his incapacity for work resulting from the injury was total, not to exceed 500 weeks. This agreement stated his average weekly wages and provided he should receive one-half of that amount "per week payable under act." This was just what the law provided as applied to the undisputed facts

and then existing conditions, and nothing more. It did not specify how long such weekly payments should continue, though an intent to cover the period of total incapacity might be inferred. So far as it went it was according to law and fixed a weekly basis of compensation for the ascertained total incapacity. This the board approved. But it made no provision for the unascertained future partial incapacity which might follow the total, or for any lump sum which should be paid in final settlement.

The approval by the board of this manifestly incomplete agreement, in view of the time when made and the nature of the injury, did not divest the board of jurisdiction, nor deprive it of its general supervisory powers in material matters necessarily left open for adjustment before final disposition of the case. The settlement receipt in full, given by claimant before he resumed work, is not shown to have been filed with or approved by the board. Had it been, a different question would confront us under said section 5, pt. 3, of the act (2 Comp. Laws 1915, § 5458).

The last matter in the case brought to the attention of the board, so far as shown, before claimant filed his petition for additional compensation under a claim of partial incapacity, was an agreement for weekly payment under the act on a basis of total incapacity, which it approved. Section 14, pt. 3 (2 Comp. Laws 1915, § 5467), gives the board the right, if it finds that the facts warrant such action, to end, diminish, or increase "any weekly payment under this act." It is said the parties interested had settled this question by agreement, as evidenced by the settlement receipt claimant signed, but to "be deemed final and binding upon the parties thereto" under the act it was necessary that it should be filed with and approved by the board.

Defendant's second contention is that, if it be found

190 Mich.—33.

the board had authority to reopen the case, no award could be made by it for further compensation, as it is conceded claimant at the time of filing his petition, and when the testimony was taken as to his physical condition, was and had been since February 22, 1914, earning as much or more wages than he did before the accident causing his injury, and section 10, pt. 2, of the act (2 Comp. Laws 1915, § 5440) provides:

"While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee a weekly compensation equal to one-half the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter. * * *"

If this were the only and controlling provision in the act upon that subject, appellant's contention could not be questioned; but the last sentence of the next ensuing section (11), which concludes a long series of provisions in it and preceding sections classifying injuries, treating total and partial incapacity, specifying and defining weekly rates, time payments shall continue, amount of compensation, methods of arriving at the same, etc., is as follows (2 Comp. Laws 1915, § 5441):

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee, computed according to the provisions of this section, as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the accident, the same to be fixed as of the time of the accident, but to be determined in view of the nature and extent of the injury."

Appellant urges that the provision is directly contradictory of section 10 and an interpolation which means nothing, as "weekly loss of wages" is not men-

tioned in the act. While not referred to in exact language, in substance it is inevitably connected with and treated in what goes before touching compensation for incapacity resulting from the injury.

Although this provision is apparently restrictive, we do not find it directly contradictory of section 10, and if it were, being the last of the two provisions, it should prevail under the general rules of construction, provided either must be disregarded. The language of this last provision is plain, and has but one obvious meaning, designating as the test capacity to earn in the same employment in which the employee was injured. That under this rule instances may arise where it works inequitably, does not authorize the court to read exceptions into it or modify its plain language defining the basis for estimating incapacity, which at best can only be approximated. If the method ought to be changed or exceptional cases provided for, the remedy rests with the legislature.

A ready disposition of this case is embarrassed by total absence of any findings of fact by the board, which the statute appears to contemplate, though not in express language commanding. Section 12, pt. 3 (2 Comp. Laws 1915, § 5465). Counsel have stipulated to the return as satisfactory, and "a resume of such testimony" with the order of award made by the board have been passed up for this court to help itself to what it can find. Technically the order contains an implied finding of facts legally sufficient to support it, and in that view the court may search the testimony to ascertain if the necessarily inferred facts presumptively found have evidential support. The dates when the testimony was taken are not disclosed, though it appears to have been taken at intervals between the time of filing claimant's petition and the hearing, and most of it while claimant was in appellant's employ. But when recalled for further examination some weeks

later, near the conclusion of the proofs, claimant disclosed that he had been "let go" about the time he "blackened this fellow's face," which episode resulted, as he stated, in his taking a ride to the county jail in a patrol wagon, where he asserts, however, he was only detained from Saturday night until 2 o'clock Sunday afternoon. It is stated without denial in appellant's affidavit that an investigation of charges made by county officials and a "passenger upon whom he had committed a trespass" led to claimant's discharge from its employ. Just what appellant claims for the fact that claimant had misbehaved and been discharged is not clear, and what weight the board gave the fact he was not shown to be employed at the time of the hearing is not apparent. It would be equally competent to show that after claimant filed his petition appellant had arbitrarily discharged him, if such were the fact. In either case his incapacity to engage in the employment in which he was working at the time of the accident would be the same, and the possibility of either contingency but illustrates that the rule appellant contends for is also fallible, and open to contingencies which might operate inequitably.

To sustain its award the board must have been able to find from competent testimony a continuing partial incapacity to properly perform the work of a motorman, in which claimant was engaged at the time of the accident. There is testimony tending to sustain such a finding. Aside from claimant's own testimony as to continuing pain, weakness, and swelling in his leg which rendered it difficult for him to be upon his feet long and get around readily, the physicians called by both sides agree that he had a shortening of the leg of from a half to three-quarters of an inch which would be permanent, and that otherwise it would be months, if not years, before it would be strong and normal, if ever; that in its condition at the time they testified

the lost percentage of normal use and strength was
from 25 to 75. Dr. Dolman, the physician who attend-
ed and operated upon claimant at the time of the acci-
dent and cared for him until he was discharged from
the hospital, called as a witness by respondent, testi-
fied: The broken limb was so seriously injured that,
"under usual circumstances, the injury would undoubt-
edly have caused him to lose his leg by amputation."
That he, however, decided to perform an operation and
try to save the limb, which started to improve some
five weeks after the operation and ultimately made a
very successful recovery. That the injured leg was
about half an inch short, and the impairment of func-
tion at the time witness was testifying was presumably
25 per cent. and not more than 33 1/3. That when
claimant left the hospital he "was able to walk about
on his leg with difficulty. He could put his foot down
and bear his weight on the broken limb." That perfect
union was not restored and circulation had not fully
established itself in the leg; witness would say it would
re-establish itself so that claimant would be able to
work eventually as a laborer, in perhaps a couple of
years. The testimony of physicians called by claimant
was somewhat along the same lines, but on the whole
tending to show a greater degree of impairment than
that of Dr. Dolman, and, touching his ability to work
as a motorman, was to the effect that his condition
would detract from efficiency, and it would be difficult
for him to work in that capacity successfully; various
reasons being given therefor.

The agreement approved by the board only provided
for a weekly payment of indefinite duration, which was
discontinued without its approval. Under such cir-
cumstances, we conclude authority yet remained with
the board to review the matter of weekly payment and
diminish, or approve of ending the same, as it found
the facts warranted, as provided in section 14, pt. 3, of

the act (2 Comp. Laws 1915, § 5467) ; and, having such authority, its order has support in testimony tending to sustain facts essential to its validity.

Its order is therefore affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.