JAMESON *v.* WALTER S. NEWHALL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—DIS-
   ABILITY—AMOUNT OF COMPENSATION.
   Under the workmen's compensation act, an injured em-
   ployee's right to compensation is to be tested by his
   ability to earn at the same employment in which he was
   employed when injured. Section 11, part 2, Act No. 10,
   Extra Session 1912 (2 Comp. Laws 1915, § 5441).

2. SAME—COMPENSATION—AWARD BY INDUSTRIAL ACCIDENT BOARD.
   An award by the industrial accident board of total disability,
   with the proviso that, should plaintiff become only parti-
   ally incapacitated he should receive compensation at the
   rate of one-half the difference between his average weekly
   wage before the injury and the average weekly wage he is
   able to earn during the period of his partial disability,
   was justified under section 11, part 2, of the workmen's
   compensation act (2 Comp. Laws 1915, § 5441), where the
   evidence showed that plaintiff was physically incapacitated
   from following his former employment as an expert pile
   driver.

Certiorari to Industrial Accident Board. Submitted
January 22, 1918. (Docket No. 153.) Decided March
27, 1918. Rehearing denied June 20, 1918.

Berton Jameson presented his claim for compensa-
tion against the Walter S. Newhall Company for in-
juries received in defendant's employ. From an order
awarding compensation, defendant and the Fidelity &
Casualty Company, insurer, bring certiorari. Af-
firmed.

*Guy W. Moore* and *Hal P. Wilson,* for appellant.

*Person, Thomas, Shields & Silsbee,* for appellee.

KUHN, J. On April 17, 1916, the applicant, Bert
(or Berton) Jameson, was in the employ of the re-

spondent Walter S. Newhall Company as foreman of certain pile driving operations in connection with the construction of an ore dock at Zug Island, and on the morning of that day, while he was engaged in superintending the moving of a pile driver, the pile hammer was lowered in such a manner that it struck one end of a plank and hurled the other end violently against the right side of his face. The impact rendered him unconscious, fractured the right side of his jaw, destroyed nearly all his teeth, cut a large gash in his right cheek, severed certain facial nerves resulting in paralysis of a portion of the right side of his face and caused a partial ankylosis of the jaw, leaving him with impaired sight and hearing, subject to dizzy spells, and permanently weakened physically. He can now open his jaw only about three-fourths of an inch and it is impossible, for this reason, to fit him with artificial teeth.

Prior to the accident he was a strong, vigorous man, capable of performing heavy physical labor and able to engage in occupations of a dangerous character. He had expert knowledge of the construction and operation of derricks and other machinery used in construction work and a long experience in that line of employment. It is admitted that pile driving requires physical labor of a very heavy kind, such as the handling of immense timbers, etc., and is moreover a dangerous occupation, not only because of the clumsy and ponderous apparatus used therein, but also because it involves the climbing to, and working at, considerable heights, requiring a clear head and steady nerves. The testimony showed that a capable foreman in this line of work should, and that Mr. Jameson did, take an active part in the heavy lifting and in the dangerous part of the work; that he usually set the timbers himself, had tackles to handle, and personally climbed to the top of the pile driver when

necessary to adjust the apparatus there. His work included the repairing of the pile driver and other machinery. Since the accident, applicant has been unable to resume this line of work, partly because he is greatly weakened by reason of insufficient nourishment, his injury having made it impossible for him to masticate food, and partly because he is now subject to dizzy spells when he attempts to climb to any height and whenever he stoops over. The superintendent of the Newhall Company testified:

"I would hesitate to put him in charge of a pile driver crew, or in charge of a crew doing what he was doing the day he was hurt. I would hesitate for two reasons, and the first is physical inability to handle it properly, and the fact is that most always when a man goes through experiences of that kind, he loses his nerve for work of a similar character. * * * The machine he was handling was about 65 feet high, and weighed 9,000 pounds, and it requires a man of full judgment and more or less daring to handle equipment of that sort successfully."

Ten weeks after the accident Mr. Jameson had recovered sufficiently to be able to do light work and was given employment by respondent, first as foreman of an excavating gang, involving no physical labor, then as carpenter foreman in connection with some timber work on the dock, later as foreman or superintendent of some concrete bridge construction work near Warren, and afterwards at respondent's carpenter department in North Detroit for about three weeks, the last three positions requiring some light physical labor on his part. Since April or May, 1917, he has had no further employment by respondent, and, up to the time of taking the testimony, in September, 1917, only about three weeks' work, as a carpenter foreman, for another construction company.

At the time of the accident, applicant was earning $4.75 per day, working 10 hours a day and six days

per week.   When he first went back to work, 10 weeks after his injury, the company paid him $4.50 per 10-hour day for the lighter and less responsible employment they then gave him, and when they made him foreman of the carpenter work on the dock, they increased his wages to $5 per day of 10 hours.   He also received this same wage for his bridge work at Warren and the shop carpenter work at North Detroit.   Wages generally had increased in the meantime.

Both applicant and respondent were under the workmen's compensation act at the time of the accident, and applicant's claim for compensation was, by stipulation, heard before Mr. Ora E. Reaves, deputy commissioner, as sole arbitrator.   He awarded $10 per week for the period of 10 weeks for total disability, and for partial disability from the date of applicant's return to work to date of hearing, 75 cents per week, and thereafter one-half the difference between his wage before the accident and what he might earn in the future.   Both parties appealed to the full board, who, after hearing, ruled that claimant was totally disabled within the meaning of the act, and granted compensation at the rate of $10 per week, with the proviso, however, that if applicant should become only partially incapacitated, he should receive compensation at the rate of one-half the difference between his average weekly wage before the injury and the average weekly wage he is able to earn during the period of his partial disability.

The last sentence of section 11, part 2, of the workmen's compensation act, being section 5441, 2 Comp. Laws 1915, is as follows:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee, computed according to the provisions of this section, as shall fairly represent the proportionate extent of the impairment

of his earning capacity in the employment in which he was working at the time of the accident, the same to be fixed as of the time of the accident, but to be determined in view of the nature and extent of the injury."

It is the contention of the respondent and appellant that the board erred in holding that the claimant was permanently disabled because of the fact that he was unable to engage in the specific and identical work that he was engaged in at the time of his injury, and to give the law this construction would result in great inequity. It is the contention of counsel for claimant that the question here presented has been squarely ruled upon in the case of *Foley* v. *Railway*, 190 Mich. 507. At page 515, Mr. Justice STEERE, speaking for the court, in referring to the language of section 11, above set forth, said:

"The language of this last provision is plain, and has but one obvious meaning, designating as the test capacity to earn in the same employment in which the employee was injured. That under this rule instances may arise where it works inequitably, does not authorize the court to read exceptions into it or modify its plain language defining the basis for estimating incapacity, which at best can only be approximated. If the method ought to be changed or exceptional cases provided for, the remedy rests with the legislature."

Counsel for the appellee does not insist that the test in this case should be that the injured man must be able to pursue the identical act in which he was engaged at the time of his injury, but that the facts here presented conclusively show that the claimant cannot pursue *the same kind of employment* as he did before the accident, that is, being an expert pile driver. In this contention we think that counsel for claimant is clearly right. The serious character of the injuries here undisputed clearly shows that the claimant is physically incapacitated from pursuing the

employment in which he was engaged at the time of this accident, and that therefore the case comes, as contended, squarely within the ruling of the *Foley Case, supra.* We see no escape from the conclusion that the industrial accident board was right in so holding, and therefore affirm the award made by them.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.