SCHIMMEL v. DETROIT PRESSED STEEL CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LOSS OF FINGER—DISABILITY—COMPENSATION.

Where an employee suffered the loss of the index finger of his left hand and a laceration of the second finger and palm of the hand, incapacitating him for work at his former employment as an electrician, he was entitled, under the workmen's compensation act, to pay for the period of disability subsequent to the expiration of the specific time for the loss of a hand.

206—Mich.—29.

Certiorari to Industrial Accident Board. Submitted May 1, 1919. (Docket No. 63.) Decided July 17, 1919.

Carl Schimmel presented his claim for compensation against the Detroit Pressed Steel Company for injuries received in defendant's employ. From an order denying a petition to discontinue payments for total disability, defendant and the American Mutual Liability Insurance Company, insurer, bring certiorari. Affirmed.

*Charles H. Ruttle* (*Guy W. Moore* and *Hal P. Wilson,* of counsel), for appellants.

*Payne & Payne,* for appellee.

STONE, J. On October 31, 1917, the claimant, who was .employed by the appellant Detroit Pressed Steel Company, in the capacity of electrician, sustained an accidental, crushing injury to his left hand, when said hand was run over by an electric traveling crane. The nature of the claimant's work was such as required him to work in elevated places, requiring him to maintain his balance by whatever means were near at hand, while he carried on his work. He was engaged in placing conduits between certain buildings of said appellant, and was required for the time being to work near a crane runway. While working in that position, and with no other means of support, he grasped one rail of said crane runway, or allowed his left hand to rest thereon to steady himself. While in that position, an electric traveling crane proceeded along said runway without giving a warning, and upon and over his left hand, necessitating the amputation of the index finger, together with the third metacarpel bone thereof, a severe crushing and loss of the tendon—flexor tendon—of the second finger,

and a severe laceration of all of the tendons of the palm. After being totally disabled for over one month, claimant returned to work for said appellant and was employed in an entirely different line of employment, namely, that of foreman in the tool crib. At the time of the accident his wage was 45 cents an hour, while at the time of the hearing before the industrial accident board, a man in the same employment was paid from 85 cents to one dollar an hour. Claimant's wage in the tool crib was 55 cents an hour. But it was his claim that he could no longer follow any part of his former employment, that of an electrician.

The effect of the accident upon claimant, at least so far as his former employment with this respondent is concerned, was clearly stated by Frederick May, chief electrician for the respondent:

"Cross-examination.
"*Q.* If he had partial loss of the second finger and the palm of the hand there was injured, he couldn't grip?

"*A.* Of course, eventually I would find that out.

"*Q.* If you four ꟻ that out would you put him back on that work?

"*A.* I wouldn't put him back, it is certainly true, after I found that out."

Claimant, among other things, testified as follows:

"*Q.* Now, was it necessary to use both hands?

"*A.* I could never have done the work I was doing with one hand.

"*Q.* At any time would it be necessary to hold anything in position with one hand and tighten it up with a wrench or pliers in the other hand?

"*A.* I have had to work for half an hour or three-quarters of an hour at a time, and hang on with one hand and work with the other.

"*Q.* Here in this plant?

"*A.* Yes, sir. * * *

"*Q.* Have you ever tried to work at the occupation you were engaged in at the time of the accident?

"*A.* I have tried to use my hands in several lines.

"*Q.* In what lines?

"*A.* I mean in several branches of the electrical. I have tried to repair my wife's electric iron which is the simplest thing in the world to repair, and I couldn't hold the small wires sufficiently tight enough with the left hand, to skin it with the right hand. I can't handle the knife in my left hand at all."

A physician called by the claimant expressed the opinion that the claimant will not be able to use the injured hand in heavy work and heavy lifting. He testified as follows:

"*Q.* Would you say the hand was permanently injured?

"*A.* No, well, permanently injured in certain regards.

"*Q.* In what regard, doctor?

"*A.* I don't believe with that scar over the nerve, he will ever regain the proper function of that middle finger, I don't believe.

"*Q.* What would you say as to his capacity to grip?

"*A.* That is what I said before. I tested it several times, of course, and I formed the opinion that the function was just about 50 per cent. of normal strength.

"*Q.* And in your opinion with anything that would require a strength of grip he would not be able to do it?

"*A.* I don't think so."

At first an agreement in regard to compensation was entered into, by the terms of which said respondent agreed to pay applicant 35 weeks' compensation at $10 per week for the loss of the left index finger. This agreement was never approved by the industrial accident board. Although payments were being made to claimant under this agreement, yet he filed notice of claim for injury, and on May 23, 1918, a committee of arbitration awarded claimant compensation for 35 weeks at $10 per week for loss of index finger; and,

in addition thereto, $10 per week for disability subsequent to the 35 weeks' period. Payments were continued by respondent, and accepted by claimant during 34 weeks, but claimant refused to accept the payment for the 35th week or to sign a settlement receipt, claiming that because of the condition of his hand he was unable to perform the same duties as prior to the accident.

Respondent American Mutual Liability Insurance Company filed a petition with the board praying to be relieved from further liability under the award of the committee on arbitration, it appearing that applicant had returned to work for the respondent, in charge of the tool crib, at 55 cents per hour, plus a ten per cent. bonus, and that he was able to perform his former duties, although he never actually attempted so to do.

Testimony was taken by the parties hereto, and after consideration by the industrial accident board an order was entered December 24, 1918, denying respondent's petition, and ordering the payment of $10 per week for total disability subsequent to June 26, 1918, the date of the expiration of the 35 weeks period. It is this order of the industrial accident board that this court, upon certiorari, is asked to review. That order continuing compensation reads as follows:

"A petition having been filed by the respondents in the above entitled cause, praying for reasons therein set forth that they be permitted to discontinue payments of the compensation in the case as of July 3, 1918, and the same having come on to be heard before the full board on November 20, 1918, and proofs having been filed and due consideration having been had thereon; the board finds as a fact from the entire files and testimony in the case that said applicant has been since the date of the accident, and was at the time his deposition was taken on November 18, 1918, totally incapacitated as an electrician, the employment

in which he was engaged when injured, and is entitled to receive compensation in accordance with the award of the committee of arbitration, dated May 23, 1918, viz.: At the rate of ten dollars ($10.00) per week for a specific period of thirty-five weeks, as for the loss of the index finger of applicant's left hand, and at the proper rate during any disability, whether total or partial, applicant may suffer, in his usual employment, subsequent to the thirty-five weeks' period mentioned, because of injuries to his left hand, apart from the amputated index finger.

"It is therefore ordered and adjudged that said applicant is entitled to receive and recover from said respondents compensation at the rate of ten dollars ($10.00) per week, from the end of the period covered by the last payment thereof, June 26, 1918, up to and including the date of the taking of his deposition, November 18, 1918, in all two hundred and five dollars ($205.00), which amount shall be paid forthwith and receipt filed with the industrial accident board, it appearing from the files that one week's compensation, or $10.00, will complete the thirty-five weeks' period mentioned herein, and the remainder of the $205.00 will be compensation as for total disability resulting from injuries to applicant's left hand apart from the amputated index finger.

"It is further ordered that from and after November 18, 1918, applicant is entitled to receive and recover from said respondents, compensation at the rate of ten dollars ($10.00) per week during the period of his total disability in the employment in which he was engaged when injured; and should such disability become partial, then applicant shall be compensated at a rate equal to one-half the difference between the amount he was earning per week when injured, and any lesser amount he may thereafter be able to earn in the same employment, during the continuance of such partial disability."

Appellants state in their brief that the only question presented by the record arises out of the failure and refusal of the industrial accident board in its order to properly limit compensation to the amount specified by the workmen's compensation act, for the

injuries applicant suffered, to wit: "the loss of the index finger of the left hand and an injury to the palmar surface of the same hand." Attention is called to the provision contained in section 10, part 2, of the workmen's compensation act (2 Comp. Laws 1915, § 5440), which reads as follows:

"In no case shall the amount received for more than one finger, exceed the amount provided in this schedule for the loss of a hand."

It is the claim of appellants that under the authority of *King* v. *Davidson,* 195 Mich. 157, and *Lovalo* v. *Michigan Stamping Co.,* 202 Mich. 85, the order of the industrial accident board should be so modified as to limit respondents' liability to a period not exceeding 150 weeks, as for the loss of a hand. We are unable to agree with counsel for the respondents in this contention.

An examination of *King* v. *Davidson, supra,* shows that the issue was whether in allowing compensation for the loss of three fingers the compensation should be limited to 20 weeks, being the longest period allowed for the loss of either of the fingers involved, or whether the period of payment should embrace the aggregate of 50 weeks, being determined by adding together the time allowed for the loss of each of the fingers involved. This court, being of the opinion that the loss of three fingers involved greater disability than the loss of one finger, allowed for the aggregate amount of 50 weeks. We think that case readily distinguished from the instant case.

Referring to the *Lovalo Case,* the industrial accident board, in its return to the writ of certiorari herein, expressed its conclusion that that case was not applicable to the facts in the instant case, as in the latter only the index finger was amputated. It said:

"The other injuries were caused by a crushing and

burning of the fingers and hand and by the destruction of the tendons of some of the fingers. The board concluded that the *Lovalo Case* applied to amputations resulting from injuries, and not to a case where only one finger was amputated and the remainder of the hand was injured or destroyed through crushing or burning or from a destruction of the tendons. The board, under the order made, left the case open so that the interested parties could come before the board from time to time if they found it necessary, and the board could then make such orders as the future might determine it was proper to make. The board knows of no theory upon which it would be justified in awarding the applicant compensation for 150 weeks as for the loss of his hand, and the board knows of no theory upon which it would be justified in holding that he might not be entitled to recover more than 150 weeks if the future shall determine that his incapacity lasts long enough to entitle him to compensation for more than that time."

An examination of the *Lovalo Case* shows that there the applicant was contending for compensation for 150 weeks, Justice STEERE, in the opinion, stating:

"Appellee contends that he should receive compensation for 150 weeks for the loss of the entire hand, or that the industrial accident board's order should be affirmed."

Here the claimant is asking that compensation shall continue during the period of disability as that disability shall from time to time appear. Claimant's position in this court is that the statute does not, under the specific disability section, provide for the loss of use of a hand, except in so far as that loss of use tends to, or does actually, affect the ability of the injured servant to earn in the same employment in which he sustained his injury.

Attention is called by claimant's counsel to section 9, part 2 of the act (2 Comp. Laws 1915, § 5439), also to section 11, part 2 (2 Comp. Laws 1915, §

5441), and to *Foley* v. *Railway*, 190 Mich. 507, and *Jameson* v. *Walter S. Newhall Co.*, 200 Mich. 514, to the point that the test of disability lies in the capacity to earn in the same employment in which the employee was injured. Reference is also made to the language of this court in *Jacobs* v. *Glasser & Hoffman*, 200 Mich. 473, 478, and *Green* v. *Buick Motor Co.*, 201 Mich. 86.

In the last-cited case, the claimant, while operating a punch press, sustained an injury which so severely lacerated the third and fourth fingers of his left hand that it was necessary to amputate them. The second finger was also lacerated, but was not amputated. Subsequently, claimant entered into a written agreement with respondent insurer in which it was stated as to the accident:

"While blanking gas tank support flanges one stuck in die and while knocking same out punch came down and cut off third and fourth fingers of the left hand at second joint."

This agreement was approved by the industrial accident board. Subsequently claimant regularly filed and served notice of claim for injury, which he stated as follows:

"The loss of the third and fourth fingers, also laceration of second finger."

The claimant filed with the industrial accident board a petition alleging that in addition to the loss of the third and fourth fingers, he had partially lost the use of the second finger of his left hand; that he had been compensated for the loss of the third and fourth fingers, but that he had received no compensation for the injury to the second finger, and he therefore prayed that the case might be reopened and he be allowed further compensation. The board made an order granting said petition; and, after a hearing,

it was decided that said claimant was entitled to compensation amounting to one-half the difference between his average weekly wages before the injury and the average weekly wages he was able to earn thereafter. This court found that there was evidence in the record to sustain the finding of the board, and also testimony showing that if it had not been for the injury to the second finger applicant could have done the work he had done previous to the injury, but was then unable to do so because of the injury to the second finger, and the decision of the board was affirmed by this court.

We are of the opinion that, under the authority of the cases cited, the claimant is entitled to compensation as granted by the industrial accident board. As this court said in *Limron* v. *Blair*, 181 Mich. 76:

"The statute speaks in terms of disability. * * * When the period of disability ends, compensation ceases."

An examination of the record shows that there were ample facts before the board upon which to base its findings, and, no error in the record appearing, the order of the board is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.