MYERS *v.* WADSWORTH MANUFACTURING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CON-
TINUED DISABILITY—FINDING OF BOARD SUPPORTED BY RECORD.
     On certiorari to review an order of the industrial accident
     board denying defendant employer's petition to be re-
     lieved from further payments under the workmen's com-
     pensation act, the finding of the board that at the time
     of the last payment plaintiff was still disabled as a
     result of the injury for which compensation had been
     paid, *held*, justified by the record.

2. SAME—INJURED FOREARM—OPERATION—REFUSAL OF EMPLOYEE
TO SUBMIT TO MINOR OPERATION RELEASES EMPLOYER FROM
FURTHER PAYMENTS.
     Where an injured employee refused his employer's offer
     of an operation to restore the usefulness of his injured
     forearm and hand, which operation, in the opinion of the
     attending physician, would not be accompanied by any
     considerable risk, and offered a reasonable possibility of
     improving the functioning of said members, although he
     would not so guarantee, the petition of the employer to be
     relieved from further payments until the employee sub-
     mits to said operation should have been granted by the
     board.

Certiorari to Industrial Accident Board. Submitted
June 23, 1921. (Docket No. 6.) Decided July 19,.
1921.

William H. Myers presented his claim for compen-
sation against the Wadsworth Manufacturing Com-
pany for accidental injuries in defendant's employ: On
petition of defendant and the General Accident, Fire
and Life Assurance Corporation, Limited, insurer,.
to discontinue payments under an agreement. From an
order denying the petition, defendants bring certiorari.
Reversed, and remanded.

On the question of the refusal of injured workman to have
operation performed as bar to compensation under workmen's
compensation act, see notes in L. R. A. 1916A, ·387; 6 A. L. R.
1260; 11 A. L. R. 230.
     On consideration of possible earnings of injured employee in
other employment, in fixing compensation under compensation
acts, see note in L. R. A. 1916A, 377.

*Kerr & Lacey,* for appellants.

*Allan R. Black,* for appellee.

STONE, J.   A petition was filed by the defendants praying for reasons therein set forth that they be permitted to discontinue payment of compensation to plaintiff, or applicant, herein.   Those reasons will be referred to later herein.   It appears that prior to and on July 14, 1920, the plaintiff was in the employ of the defendant Wadsworth Manufacturing Company, in the city of Detroit, which company's principal business was the building of automobile bodies; that it was operating under the workmen's compensation law, and the other defendant had been designated, with the approval of the industrial accident board, as the means of insuring said manufacturing company against the risks imposed upon it by the terms of said compensation law; and said General Accident, Fire and Life Assurance Corporation, Limited, was carrying the compensation risk of said manufacturing company.

That the plaintiff was on the day aforesaid employed by said defendant manufacturing company as a sub-foreman and final inspector in the finishing department of said defendant's plant.   Plaintiff's duties were to inspect the automobile bodies before the finish varnish coat was put on, and as such inspector it was his duty to carefully look the body over as it came through on a small truck, before it was attached to a chain conveyor, for any blemishes or marks, which it was his duty to remove with sandpaper or pull the body out of the line and have one of the men assisting him do the work of repairing the blemish.

That because of the lighting conditions it was necessary to turn the body around for examination and inspection, which turning had to be done by pushing on the windshield.   In the performance of this duty upon

a body the windshield was broken and plaintiff's right arm and wrist were severely cut and injured by the glass, the nature and extent of which injury was described in the agreement for compensation hereinafter referred to as follows:

"The *flexor corpi ulnoris* tendon was completely severed, and also the ulnor artery muscles and facia were badly lacerated over two-thirds of distance across lower forearm."

Thereafter an agreement in regard to compensation was entered into between the parties providing for the payment of compensation at the rate of $14 per week during total disability, and at a proper rate per week during partial disability, if the employee should become legally entitled to compensation for partial disability; which agreement, dated the 19th day of July, 1920, was filed with the industrial accident board, and approved by it.

Thereafter compensation as for total disability was paid to the 11th day of October, 1920. On the 13th day of October, 1920, defendants filed with said board a petition to be relieved from further payments of compensation, and for such other and further relief as to the industrial accident board should seem just and proper. Said petition averred that after the date of the injury claimant returned to the Wadsworth Manufacturing Company in his capacity as foreman and performed his duties as such until on or about the 18th day of September, 1920, at which time by virtue of shop conditions he was discharged from the employ of the Wadsworth Manufacturing Company. It was also stated in said petition that an operation to remedy a disability resulting from the injury was tendered to plaintiff and refused by him, under date of August 21, 1920. The relief prayed for was that upon hearing had compensation payments therein might be suspended until such time as claimant sub-

mitted to the operation tendered. And that defendants might be relieved wholly from further payments of compensation in the case.

The plaintiff filed his answer to such petition, and testimony was taken in support of the various contentions of the parties. The findings of the industrial accident board were as follows, under date of January 8, 1921:

"(*c*) That said applicant was still disabled, in the employment in which he was engaged when injured, as a result of said injury, on October 11, 1920, the end of the period covered by the last payment of compensation in the case, and should continue to receive compensation in accordance with the terms of the approved agreement on file in the case.

"(*d*) That there is no reasonable assurance that the proposed operation, offered by respondents, on applicant's injured arm will result in lessening applicant's disability or prove to be beneficial in any way, and that applicant's refusal to undergo the said operation was not unreasonable."

After determining the amount then due and payable, and directing payment thereof and of future compensation in accordance with the approved agreement, the finding concludes as follows:

"It is therefore ordered and adjudged that said petition should be and the same is hereby denied, and that said applicant is entitled to receive and recover from said respondents compensation in accordance with the above findings, receipts therefor to be filed forthwith, all in accordance with the provisions of the workmen's compensation act."

The case is here upon certiorari sued out by the defendants, who assign error upon the findings marked above respectively, "c" and "d".

*c*. After a careful reading of the testimony we are satisfied that the board did not err in its finding marked "c". There was testimony that the applicant was still disabled in the employment in which he was

engaged when injured, as a result of the injury, on October 11, 1920, the end of the period covered by the last payment of compensation. It appeared that plaintiff when injured was a foreman and inspector, an employment requiring training, skill and judgment beyond that of a common laborer. Since the injury he has not been able, by reason of such injury, to perform in full the duties he was performing at the time of the accident. These duties required, among other things, the use of both hands. Counsel for defendants state in their brief:

"In the instant case, it is not the contention of the respondents and petitioners that the forearm of Mr. Myers is in the same condition as it was before the date of the accident, and indeed it is conceded that there is an impairment in the function of the forearm."

In our opinion the case comes within, and is governed by, the cases of *Foley* v. *Railway*, 190 Mich. 507, and *Jameson* v. *Newhall Co.*, 200 Mich. 514.

*d.* We are constrained, however, to differ with the industrial accident board in its conclusion and finding that there was no reasonable assurance that the proposed operation, offered by the defendants, on plaintiff's injured arm, would result in lessening plaintiff's disability or prove to be beneficial in any way, and that plaintiff's refusal to undergo an operation was not unreasonable.

The only medical testimony upon this subject was that of Dr. Condit, chief surgeon for the defendant General Accident Corporation. He first treated plaintiff under date of July 20th, continuing to treat him from time to time until August 18th. It is true that Dr. Condit used the word "possibility," but, taking his testimony as a whole, there can be no question, in our opinion, as to its meaning. The following occurred in his direct testimony:

"*Q.* Did you at that time make any suggestions to him, with reference to further treatment of his condition?

"*A.* Yes, we suggested at the time that there was a possibility of restoring the function of these flexor tendons by an operation, as soon as it was safe to do so, after the infection had cleared up.    *    *    *

"*Q.* What with reference to improving the function of this hand, without operative treatment?

"*A.* I think there is very little chance for any improvement.

"*Q.* What, if anything, did you say to Mr. Myers, under date of November 3d, with reference to operative treatment?

"*A.* We advised him of the condition, and told him that there was a good chance of improving the function, if operated upon.

"*Q.* And did you tender such services?

"*A.* Yes we did.    *    *    *

"*Q.* And what was said to that tender by Mr. Myers?

"*A.* As I remember, he refused to have it done, at least, at that time.

"*Q.* Has he afterwards appeared at the office and expressed his willingness to have it done?

"*A.* No, sir; I haven't seen him since.

"*Q.* What risk or chance would the employee take by such contemplated procedure, considering the condition of his hand now, and the likelihood of regaining function there?

"*A.* I do not think he would take any risk, not any more than the ordinary operative risk, which is practically nil, and the hand certainly would not be any worse, with a chance of being very much better.

"*Q.* And what, with reference to the seriousness of that operation, so far as injury to life is concerned?

"*A.* I do not consider that there is any, to amount to anything.

"*Q.* Have you seen him subsequent to November 3d?

"*A.* No, sir; I don't think so.

"*Q.* Did you at any time make any request of him that he appear for examination before any one else?

"*A.* Yes, sir.    *    *    *

"*Q.* And what was your request to him?

214—Mich.—41.

"*A.* That he go to some other surgeon and have his arm examined, and get the other surgeon's opinion as to the advisability of doing anything with it.

"*Q.* Did you suggest whom that surgeon should be?

"*A.* I think I suggested Dr. Hall.

"*Q.* What is Dr. Hall's given name?

"*A.* Dr. Archie C. Hall, in the David Whitney building.

"*Q.* And did you give Mr. Myers his address?

"*A.* Yes, sir."

On cross-examination the following appears:

"*Q.* Well, now, when you told Mr. Myers, or tendered this examination to him, is it a fact, Doctor, that you told him you did not know whether an operation would help him any, but in any event, it would not make the arm any worse—that it could not be made worse? Did you tell him that, or words to that effect?

"*A.* I told him—yes, I told him there was a good chance of getting some function in here, in this arm, but if it didn't do him any good it wouldn't do him any harm.

"*Q.* Well, Doctor, is that your opinion at the present time?

"*A.* Yes.

"*Q.* In other words, it is impossible to state whether an operation would be effective to restore the function of that arm?

"*A.* Yes, it is.

"*Q.* Now, is it a fact Doctor, that the leaders to the fingers, were they, at the time you examined him, severed from the forearm?—are there muscles, or what is called 'leaders,' I think the term is sometimes used—running from the forearm to each finger?

"*A.* There are.

"*Q.* Now did you discover whether or not they had been severed?

"*A.* Yes, they had.    *    *    *

"*Q.* Now, an operation of this kind, isn't it a fact, Doctor, would be very painful, and he would suffer to a large extent?

"*A.* No pain at all.

"*Q.* Well, what would have to be done, would the arm have to be opened up?
"*A.* Surely, under an anæsthetic.
"*Q.* Well, the effect would be great pain and suffering would it not?
"*A.* No, very little."

On redirect-examination the following appears:

"*Q.* Is it possible to suture nerves, the same as it is to suture muscles and tendons, Doctor?
"*A.* Yes, surely.
"*Q.* And to restore function in parts where heretofore function has been disturbed?
"*A.* Yes, sir.
"*Q.* That is not altogether uncommon is it, Doctor?
"*A.* No, it is done right along."

It was shown that plaintiff had never appeared at Dr. Hall's office for examination.

There was no dispute disclosed by the testimony on the question as to whether or not the expense of the operation would be borne by the defendants. From this undisputed testimony it clearly appears that the chances of success by an operation were very good. That an operation would not be accompanied by any considerable risk, nor would it be accompanied by any expense to the plaintiff. We think the testimony shows a reasonable ground to believe that improvement would follow the operation, but, of course, the doctor would not guarantee it.

The accident board found that Mr. Myers was disabled totally at the time of the hearing, and under Dr. Condit's testimony it appears, we think, that no recovery will be had unless operative procedure is resorted to. The total disability for the period of 500 weeks at $14 a week amounts to $7,000. Is it reasonable to say that the refusal to submit to an operation, which in all probability will in no way result in detriment to the plaintiff, either physically or financially, is reasonable conduct of the plaintiff? We

think not.   We think it cannot be said, in the light of this uncontradicted testimony, that there was no reasonable assurance that the proposed operation would result in lessening plaintiff's disability.   When, as here, the employer offers to bear the cost of the operation and hospital treatment, in an operation of minor character, where there is a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, it seems to us it is the duty of the plaintiff either to submit to an operation, or release his employers from the obligation to maintain him.   As has been said:

"Sound public policy assuredly will not justify the capitalization of such injury for the drawing of a long disability pension, when by a relatively simple operation the injured person can in all probability be made sound."

The following cases bearing upon this subject are familiar:

*Jendrus* v. *Detroit Steel Products Co.*, 178 Mich. 265 (L. R. A. 1916A, 381, Ann. Cas. 1915D, 476) ; *Ramlow* v. *Moon Lake Ice Co.*, 192 Mich. 505 (L. R. A. 1916F, 955) ; *Kricinovich* v. *Foundry Co.*, 192 Mich. 687; *Poniatowski* v. *Stickley Bros. Co.*, 194 Mich. 294; *O'Brien* v. *Albert A. Albrecht Co.*, 206 Mich. 101.

The *Kricinovich* and *O'Brien* Cases are particularly applicable to this case.   In the former Mr. Justice KUHN, speaking for this court, said:

"Before the defendant is to be charged, in law or morals, with the duty to compensate him, the claimant should first discharge the primary duty owing to himself and society to make use of every available and reasonable means to make himself whole.   This, in our opinion he has not done, and the defendant seems to have discharged the burden of proving the claimant's refusal to submit to the operation to relieve him, is unreasonable."

In the *O'Brien Case* Mr. Justice FELLOWS, after stating the facts, said:

"We appreciate the timidity with which the average person contemplates an operation, minor as well as major. But we also appreciate that in thousands of cases, operations, many of them of but minor degree, have restored incapacitated men to the army of wage earners, and put them in position to discharge their duty to their dependents, themselves and to society. We are impressed that under the undisputed evidence in the case it was the plaintiff's duty to accept the tendered operation."

*Lesh* v. *Illinois Steel Co.,* 163 Wis. 124 (157 N. W. 539, L. R. A. 1916E, 105), is an interesting case upon this subject.

It follows that the accident board erred in continuing compensation after defendants filed their petition to stop compensation until the claimant should submit to an operation. The order of the board denying the defendants' petition is reversed, and plaintiff should not be allowed further compensation until he submits to an operation. The case will be remanded for such proceedings as may be had not inconsistent with this opinion.

STEERE, C. J., and MOORE, WIEST, FELLOWS, BIRD, and SHARPE, JJ., concurred. CLARK, J., did not sit.