SILVEY v. PANHANDLE COAL COMPANY No. 5.

[No. 12,747. Filed January 12, 1927. Rehearing denied April 27, 1927.]

1. MASTER AND SERVANT.—*Opinions and conclusions of physicians and surgeons ordinarily entitled to great weight in hearings before Industrial Board.*—The opinions and conclusions of physicians and surgeons who have made a personal examination of an injured employee are ordinarily entitled to great weight in determining the physical condition of the claimant for compensation under the Workmen's Compensation Act. p. 116.

2. MASTER AND SERVANT.—*Injured workman presumed entitled to full compensation until able to resume work of same or similar kind.*—The presumption is that an injured workman is entitled to full compensation under the Workmen's Compensation Act until he is able to resume work of the same kind or of the same general character as that in which he was engaged at the time he received the injury. p. 117.

3. MASTER AND SERVANT.—*Industrial Board cannot order injured workman to return to work.*—The Industrial Board has no power to order an injured workman to return to work; it can only determine whether his refusal of employment offered him was unjustifiable so as to warrant an order reducing the compensation previously awarded him. p. 118.

4. MASTER AND SERVANT.—*Award of compensation under Workmen's Compensation Law for back sprain, producing total disability, reversed.*—An award of compensation for 3 5/7 weeks on finding of total disability for that period, resulting from a sprain of the back, was reversed, with directions to make a new finding in accordance with the evidence at former hearings, render an award granting compensation during total disability not exceeding 500 weeks, also to grant a further hearing as to whether there has been any change in employee's condition since former hearing and to make such further award as the evidence may warrant. p. 118.

From Industrial Board of Indiana.

Proceeding for compensation under the Workmen's Compensation Act by Hugh Silvey, employee, opposed by the Panhandle Coal Company No. 5, employer. From an award of compensation for total disability for 3 5/7 weeks, the claimant appeals. *Reversed.* By the court in banc.

*John A. Riddle,* for appellant.

*White & Wright,* for appellee.

Hugh Silvey was employed by the Panhandle Coal Company No. 5 as a workman in a mine. On July 29, 1925, he received an injury by accident arising out of and in the course of his employment. On August 5, 1925, the employer reported the accident to the Industrial Board. On January 27, 1926, the workman filed his application for compensation. On April 7, 1926, the matter was tried by one member of the board. On April 19, 1926, the hearing member of the board made a finding of facts, in the usual form. In addition to the mere formal matters, the finding states that on July 29, 1925, while in the employ of the defendant at an average weekly wage in excess of $24, the workman suffered an injury by an accident arising out of and in the course of his employment, of which the defendant had knowledge and furnished medical attention; and that, as a result of the injury, the workman was totally disabled, to and including August 31, 1925. On that finding, the following award was made:

"It is, therefore, considered and ordered by the Industrial Board of Indiana that the plaintiff be and is hereby awarded against the defendant, compensation at the rate of $13.20 per week for 4 and 6/7 weeks, beginning August 6, 1925, said compensation to be paid in cash in a lump sum.

"It is further ordered that the plaintiff pay the costs of this proceeding."

The workman asked for a review by the full board, and on May 18, 1926, the full board reviewed the evidence, heard the argument of counsel, and took the matter under advisement.

On May 25, 1926, the full board made a finding of facts identical with the one previously made by the single member, and also made the following award:

"It is therefore considered and ordered by the Industrial Board of Indiana that the plaintiff be, and is hereby awarded against the defendant, compensation at the rate of $13.20 per week for 3 5/7 weeks, beginning August 6, 1925, said compensation to be paid in cash in a lump sum.

"It is further ordered that the defendant pay the costs of this proceeding."

The workman's contention is that on the evidence he is entitled to more compensation than has been awarded him.

The uncontroverted evidence establishes the following facts:

On July 29, 1925, the workman was, and for some time prior thereto had been, employed in a coal mine. On the morning of that day, he was pushing an empty car. The car was hard to push and required considerable exertion. While he was pushing, one foot slipped off a tie, resulting in an injury to his back. He rolled over to one side and the car went back on the track. He scrambled around awhile, then got hold of a prop and pulled himself up. He stood there a little while, and then called for help to push the car up. He could not push any. Some "machine men" came and pushed the car up for him. He then got down on his knees and tried to shovel, but could not. When the driver came, the car was not more than half loaded; so he told the driver to take the car, for he could not work any more.

VOL. 86—8

He did not report the accident immediately, because he thought he would get all right "in a day or so." About a week later, he went to the mine and reported to the pit boss. On that occasion, the weighman asked him if he thought he could walk around and get over the mine with a paper, and stated if he could, the pay would be $7.50. He tried that and made one round, but could not endure it.

He remained at home at Bicknell five weeks. At the end of that period, he felt that he was getting a little better and then he asked Dr. Staley how he was getting along. Dr. Staley answered: "I think very well but slow; sprained back takes a good while to get well sometimes." So the workman, thinking that he was getting along very well, went to Mayfield, Kentucky, to visit his father, a brother and other relatives. He planned to visit there two weeks and then return home. But his back did not improve and he was unable to work. After he had been in Kentucky about seven weeks, the insurance carrier sent him papers to sign for three weeks' compensation, which papers he refused to sign. He has been living with his people in Kentucky. He received notice from the insurance carrier to be examined, and he was examined by Dr. Staley.

At the time he was injured, his wages averaged $10 a day. His age was thirty-two years. He is married, has two children, and lives with his family. He is unable to read or write.

The following is taken from the testimony of Dr. Staley of Bicknell:

"I treated Silvey for the injury he sustained on July 29, 1925. He consulted me August 4. He was under my care about four weeks. I discharged him and told him he would be able to go to work about the first of September. I saw him again about six or eight weeks afterward, when he complained to me of his back. At

that time, I examined him. I then found no objective symptoms, but only subjective symptoms—only his complaint of pain. Symptoms of back injuries or sprains are usually subjective. Sprains involve muscles and ligaments. Sprains without visible objective symptoms usually run on from four to six weeks—that is the average. There could have been a subluxation of the spinal joints caused by a slip or a twist such as he had in the mine."

Dr. Funk, who was appointed by the Industrial Board for the purpose, examined the workman on April 6, 1926, and made a report thereof in writing. After setting out a history of the case as given him by the workman, the report is in the following language:

"Examination shows nothing as to observance of the back. The patient complains of tenderness on pressure over the sacro lumbar region and left sacro iliac joint. Complains of pain on bending forward which is increased on resuming an upright position again. Complains of pain in the left sacro iliac joint on bending to the right or left side. He is wearing a girdle about six inches wide pinned tightly around the lower waist line from which he says he derives much benefit.

"Sterio X-ray plates of the sacro iliac and lower lumbar region do not reveal any trouble with bony contour whatever.

"Conclusions: This case resolves itself into a subjective proposition. Considering the history of the accident and the history of the case following, we would suspect he had a left side sacro iliac sprain. These sprains always give trouble for quite awhile, sometimes several months; but on continued rest over the extended time this patient has had since the injury, with no history of recurrent injury, we would expect his condition to be well enough along for light work at this time; and the most of these complaints are usually entirely

well after this period.   We must base our conclusions here on subjective symptoms which makes it difficult to say anything definitely.

"I believe this man should be ordered to work and no attempt be made at an estimation of permanent partial disability for at least six months from this date.   I would expect the symptoms to disappear within that time."

DAUSMAN, J. (after making the foregoing statement).—The primary question presented by this appeal is whether the workman has been awarded all the compensation that is legally his due.   There is no conflict in the evidence as to the kind of injury or as to how the injury occurred.   The only controversy relates to the rights and duties of the parties under the law.

An attentive and thoughtful reading of the finding of facts and the award based thereon cannot fail to reveal that something is lacking.   Did the injured workman suddenly pass from a condition of total disability to a perfectly normal condition?   A transition of that kind would be something unusual in human experience.   Common observation does not prepare men to believe that a workman who suffered an injury to his spine which resulted in total disability for 3 5/7 weeks would, at the end of that period, suddenly become able to resume hard labor in a coal mine.   The usual award in such cases is for compensation "during total disability not to exceed 500 weeks."   That plan leaves the way open for future adjustments in accordance with changed conditions, and is therefore eminently fair and just.

In cases like the one at bar, a great responsibility rests upon the men of medical science, and their opinions and conclusions are ordinarily entitled to

1.   great weight where they have made a personal examination of the patient.   Equipped with a

store of knowledge acquired by study and observation, the doctor is in a position to ascertain his patient's condition uninfluenced by anything except the cold scientific truth. The patient's situation is quite different. He has a vivid recollection of the accident; he has endured the pain; and the doubt, the fear and the anxiety are his. In this case, we must rely almost entirely upon the doctor's testimony concerning the workman's physical condition. Now observe the statement of Dr. Funk:

"This case resolves itself into a subjective proposition. Considering the history of the accident and the history of the case following, we would suspect he had a left side sacro iliac sprain. These sprains always give trouble for quite awhile, sometimes several months; but on continued rest over the extended time this patient has had since the injury, with no history of recurrent injury, we would expect his condition to be well enough along for light work at this time; and the most of these complaints are usually entirely well after this period. We must base our conclusions here on subjective symptoms which makes it difficult to say anything definitely."

The presumption is that the injured workman is entitled to full compensation until he is able to resume work of the same kind or of the same general 2. character as the work in which he was engaged at the time he received the injury. *Bruce* v. *Stutz Motor Car Co.* (1925), 83 Ind. App. 257, 128 N. E. 161. See, also, *Mellen Lumber Co.* v. *Industrial Comm.* (1913), 154 Wis. 114, 142 N. W. 187, L. R. A. 1916A 374, Ann. Cas. 1915B 997; *International, etc., Co.* v. *Industrial Comm.* (1914), 157 Wis. 167, 147 N. W. 53, Ann. Cas. 1916B 330; *McDonald* v. *Industrial Comm.* (1917), 165 Wis. 372, 162 N. W. 345; *Hanley* v. *Union Stock Yards Co.* (1916), 100 Nebr. 232, 158

N. W. 939; *Foley* v. *Detroit United Railway* (1916), 190 Mich. 507, 157 N. W. 45; *Jameson* v. *Walter S. Newhall Co.* (1918), 200 Mich. 514, 166 N. W. 834; *Miller* v. *S. Fair & Sons* (1919), 206 Mich. 360, 171 N. W. 380; *Woodcock* v. *Dodge Bros.* (1921), 213 Mich. 233, 181 N. W. 976, 17 A. L. R. 203; *Myers* v. *Wadsworth Mfg. Co.* (1921), 214 Mich. 636, 183 N. W. 913; *Geis* v. *Packard Motor Car Co.* (1921), 214 Mich. 646, 183 N. W. 916.

It should be specially observed that Dr. Funk says "we would expect" the workman's "condition to be well along for light work at this time." He also says that the man should be "ordered to work." Of course, Dr. Funk does not realize that the Industrial Board has no power to order men to work. It is provided by the statute, however, that if the employer desires to reduce the amount of compensation for which he is liable, he may furnish the injured workman employment suitable to his capacity, and if the workman refuses employment of that kind, "he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the Industrial Board the refusal was justifiable." §32 Compensation Act, §9477 Burns 1926.

In order that the real intent of the compensation law may be realized in this case, it is necessary that the award be reversed and a new finding of facts be made in accordance with the evidence heretofore presented to the board, granting compensation to the workman during total disability not exceeding 500 weeks. And to hear evidence as to whether there has been any change in appellant's condition since the former hearing and to make such further award as the evidence may warrant.

The award is reversed, and the Industrial Board is directed to proceed in accordance with this opinion.