### LEITZ *v.* LABADIE ICE CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—COMMON LABOR—DEFINITION.

  Common labor, as generally used and understood, signifies that kind of unskilled manual labor, with or without simple tools, which is commonly done by the masses of working people in lines of employment necessitating no special trade or previous training before engaging in them beyond what can be quickly learned and effectually performed by the laborer while employed at regular wage under direction of those in charge, as distinguished from that class of skilled and less common manual labor to perform which previous experience, apprenticeship, study, practice or manual training in some special calling, handicraft, or trade is required.

2. SAME—COMMON LABOR—TOTAL DISABILITY—TEST.

  That an employee, injured while working as a common laborer, is not able to do exactly the same particular kind of common labor, after his injury, as he was before, is not the test of total disability in proceedings for compensation under the workmen's compensation act.

---

Authorities discussing the question as to who are employees within the meaning of workmen's compensation acts, in general, are collated in notes in L. R. A. 1916A, 115, 246; L. R. A. 1917D, 145; L. R. A. 1918F, 201.

3. SAME—FINDING OF BOARD NOT WARRANTED.

> So where a common laborer was earning more wages, although at another kind of common labor, at the time of the hearing, than he was at the time he received his injury, an award by the industrial accident board was without justification, and will be set aside by this court on certiorari to review the same.

4. SAME—JURISDICTION OF BOARD AS TO FUTURE CONDITIONS.

> As the future condition of plaintiff is uncertain, and no final order has been made by the board, it yet has jurisdiction, and the case will be remanded for such further action as the parties may apply for and future conditions may warrant.

Certiorari to Industrial Accident Board. Submitted June 15, 1920. (Docket No. 14.) Decided September 30, 1920.

Carl Leitz presented his claim for compensation against the Labadie Ice Company for injuries received in defendant's employ. From an order denying a petition for the discontinuance of payments under an award, defendant and the Standard Accident Insurance Company, insurer, bring certiorari. Reversed, and remanded.

*Keena, Lightner, Oxtoby & Hanley,* for appellants.

*Thomas, Shields & Silsbee,* for appellee.

STEERE, J. Defendants by writ of certiorari seek review and reversal of an order of the State industrial accident board refusing their petition to be relieved from further weekly payments to plaintiff under a previous order of said board. The record discloses that plaintiff Leitz suffered an accidental injury on February 2, 1917, while in the defendant ice company's employ and having been, by appropriate proceedings under the workmen's compensation law, ad-

judged then totally disabled, was awarded $6.78 per week.   This was paid him from February 2, 1917, until December 19, 1919, at which time defendants asked release on the ground that his incapacity to earn wages had ceased, and he was in fact earning more money at manual labor than he received at the time of his accident.

When injured plaintiff was a young man about 20 years of age, working for the ice company as a common laborer at a wage of $3 per day of 10 hours.   He had been in its employ 16 or 18 days and before that time worked as a farm hand.   When the accident occurred he was attending to an ice slide, or chute, switch where they were filling a couple of ice houses, his duties being to attend to and switch the slide from time to time so it would carry the ice as it came up "first to one ice house and then to another," work which he said any person of average intelligence could learn to do in an hour.   The blocks of ice coming up the slide were 22 inches square and 10 inches thick, requiring, as he stated, a "fairly strong man" to handle the switch which he lifted up with his hand as occasion required.   While he was on the ice slide running the switch the slide broke and let him fall about 15 feet.   He fell somewhat angling and ice fell upon him, injuring his left hip so severely that medical attendance was required.   He was concededly laid up and totally incapacitated from labor for some time.   The award then made of one-half his weekly wages as continuing compensation for total incapacity was paid by defendants for approximately 150 weeks when defendants asked relief on the ground that he was again able to earn full wages.   He is not shown to have engaged in any employment for over two years after his injury, but in July, 1919, he entered the employ of the Auto Body Company at Lansing, operating a punching machine at 42 cents an hour and was at the time

of taking testimony in this proceeding, February, 1920, receiving 47½ cents per hour. At this work he was seated, operating the press with a pedal, using his right foot, the left leg being yet crippled so that he could not depend on it and had to use crutches, as he testified.

The entire finding of the industrial accident board in denying its petition is as follows:

"1. That the applicant is totally disabled in the employment in which he was engaged at the time of the accident.

"2. That this total disability existed at the time the testimony was submitted, February 20, 1920, and has been continuous since the date of the accident.

"3. That during the period of applicant's total disability he shall be compensated in accordance with the terms of the award entered July 7, 1917."

Following this finding the board

"ordered and adjudged that said petition should be and the same is hereby denied, and said applicant is entitled to receive and recover compensation at the rate of $6.78 per week from the date covered by the last payment  *  *  *  to continue as above provided during the period of applicant's total disability.  *  *  *  That should applicant become but partially disabled at any time in the future on account of the accident he shall be entitled to receive one-half the difference between the average weekly wage he was earning at the time of the accident and the average weekly wage he is able to earn thereafter, all in accordance with the terms of the workmen's compensation act."

It will be noted that the findings are in their nature final conclusions of mixed law and fact upon the ultimate issue presented, and leave to conjecture upon what testimony in the record the order is based.

The sole question raised by defendants is whether under the undisputed testimony in this case plaintiff, who was again able to earn more at manual labor than

when injured, was totally incapacitated for work in the class of employment at which he was engaged at the time of the accident. Their contention is that his employment was the ordinary work of a common laborer, in the particulars of which the law makes no distinction or classification. His testimony shows that prior to his employment by the ice company he was a farm hand, and at the time of his injury was employed at common labor, helping to put up ice. Defendants further point out that it likewise appears he was at the time of the hearing also engaged in work essentially that of a common laborer, able to earn, and earning, in such employment more money than at the time of his injury; that, as he testified, laborers around the body company plant did "most anything," some welding, soldering, cutting, and sometimes laboring men ran punch presses.

"*Q.* So that work which you are performing at the Auto Body Company is operating a punch press?
"*A.* Yes, sir.
"*Q.* You claim that the running of a punch press is not a laborer's work?
"*A.* I don't know as it is a laborer's work, most anybody can run it.
"*Q.* Most anybody can run a punch press that can run a slide?
"*A.* Yes.
"*Q.* It is more difficult than operating an ice slide?
"*A.* No."

As to the condition of plaintiff's leg, he testified that it was yet crippled, he could not put much weight upon it or walk without crutches, and was unable for any length of time to do work which required him to stand, saying: "It is the nerves that bother me," for which reasons he would not be able to work in operating a switch at an ice slide, as he was doing at the time of the accident.

Dr. Randall, who examined him shortly before the

hearing, testified that he used an X-ray to examine plaintiff's left hip and as far as that disclosed anything he found no deviation from normal; that his legs were of the same length and the left measured with the right as in a normal person; but when he attempted to have plaintiff do different exercises with his left foot he was unable to stand on the left leg more than a second or so at a time without support; that he could extend and reflex the leg but could not extend it outward; the function lacking in the leg being "adduction," and from the examination it was his opinion plaintiff could not do the kind of work he was engaged in at the time of the injury, as he described it; that from the history of the case and his examination at "the present time" the leg was apparently making a fairly good recovery, saying: "The only thing he lacks is the forward extension of the leg."

On what theory the accident board arrived at a determination from this record that plaintiff was totally incapacitated to earn wages in the employment of a common laborer, which is the test under the undisputed testimony in this case, we are not advised. Plaintiff's own testimony shows that when injured he was working as a common laborer and such was the nature of his employment when his petition was filed and passed upon by the board. That he was not as a common laborer able to do exactly the same particular kind of common labor he was doing when injured is not the test of total disability, as the board recognized and properly held in *Miller* v. *Fair & Sons*, 206 Mich. 360. In that case Miller was working in a foundry mixing and wheeling sand, etc., when injured in his hand and right arm, on March 23, 1916. Compensation at one-half his average weekly wages was agreed upon between the parties, approved by the board and paid until May 18, 1917. On his application that compensation be continued thereafter the

board on March 16, 1918, held he was entitled at that time to compensation from May 18, 1917, less amount he had earned during that period, saying in its decision that:

"Running an elevator is in the judgment of the board common labor. * * * It appears to the board that the hand of the applicant is in quite bad condition and it is likely that the applicant will be either totally or partially disabled for some considerable time to come. * * * It cannot be said to a certainty that he will be totally disabled nor that he will be only partially disabled, and therefore the order of the board should provide for either condition."

In the opinion affirming the board's decision, prepared by Justice OSTRANDER, it is said in part:

"The labor he was performing, shoveling and wheeling a barrow, required the use of both hands. He can and does perform labor which does not require the use of the right hand and arm. * * *

"The award must stand unless, as claimant contends, one who is a common laborer and is disabled while doing some particular labor requiring the use of both of his hands and arms is totally disabled if on account of an injury he cannot perform the same labor or labor which requires the use of both arms and hands but can perform other common labor. We are unable to make the required distinction, being of opinion that the work of one engaged in what is ordinarily described as common labor is an employment within the meaning of the act. The act does not classify persons employed at labor, but it does recognize that there are different kinds of employment. The act was intended to affect and apply to existing conditions, one of which, generally recognized, is that persons are employed as common laborers—that the employment of certain wage earners is, and is known as, common labor. A definition of common labor, exclusive and inclusive, is not easily formulated, but the common understanding is, for the purposes of this decision, illustrated in the testimony of the claimant."

Miller there described the nature of his work when

injured, as did plaintiff here. Whether he called it common labor or denied it was such would not change its character.

While, as suggested in that opinion, an exact definition of common labor, exclusive and inclusive, is not readily formulated, we think it may safely be said that, as generally used and understood, it signifies that kind of unskilled manual labor with or without simple tools, which is commonly done by the masses of working people in lines of employment necessitating no special trade or previous training before engaging in them beyond what can be quickly learned and effectually performed by the laborer while employed at regular wage under direction of those in charge; as distinguished from that class of skilled and less common manual labor to perform which previous experience, apprenticeship, study, practice or manual training in some special calling, handicraft or trade is required. Plaintiff's employment as described by him did not fall within the latter class, either when he was injured or later. Affirming the reason of the board's ruling in the Miller case this court held that while recognizing there are different kinds of employment within its meaning, the act does not classify persons employed at labor, and that what is ordinarily described or recognized as common labor is an employment. Had the board adhered to its previous ruling upon that proposition, which this court sustained, we fail to discover under the undisputed testimony in this case how the result shown in the order appealed fro    could be logically reached.

Counsel for plaintiff cite and rely on *Foley* v. *Railway*, 190 Mich. 507, and *Jameson* v. *Newhall Co.*, 200 Mich. 514, urging them as undistinguishable precedent in this case consistently followed by the board. As this court views the testimony in those cases it carried the controversies into the field of permissible issues of

fact for the board whose findings the court is not authorized to review, beyond determining whether the record discloses any competent legal evidence, direct or inferential, to support facts necessarily found by the board as a basis for its conclusions of law.

In the *Foley Case* there were various contentions and entanglements which are not to the point here, beyond a possible shading of permissible inference, but it appeared in that case plaintiff when injured was a motorman on defendant's railway running an electrically propelled car in the city of Detroit, an employment of responsibility in the business of railroad transportation of passengers, presumably requiring training, skill and judgment beyond that of a common laborer. He had worked as a machinist's helper in a railroad shop and had practical training in railroading as a fireman on a steam road. In the accident which befell him on July 22, 1913, he sustained a compound fracture of the left leg which confined him in the hospital until February 17, 1914. The surgeon in charge testified that under "usual circumstances" the injury would "undoubtedly have caused him to lose his leg by amputation," and when discharged neither perfect union of the bone nor normal circulation were restored or established in it. There was testimony that at the time of hearing the injured limb was shortened three-quarters of an inch with a 75 per cent. loss of normal use and strength and he was totally incapacitated for work as a motorman. Shortly after the accident an agreement under the statute for weekly compensation during total disability was approved by the board. After he left the hospital plaintiff was given employment by defendant as a watchman in one of its car barns and an adjustment made by defendant with him discontinuing the weekly payments under the compensation law without approval of the board. He made application to the board

for their reinstatement while yet in defendant's employ as a watchman and, whatever the merits of that phase of the case, under the facts, it appeared that before the proofs were closed he had been discharged, and so far as shown was then without employment. The original agreement approved by the board was for total disability of indefinite duration. The board had never approved its discontinuance and, acting in harmony with other provisions of the act, it had authority, under section 14, part 3 (2 Comp. Laws 1915, § 5467), to end, diminish or increase such payments on a review of the original award. This court held the order of the board would not be disturbed as there appeared to it some testimony, viewing the case in its entirety, tending to support facts essential to its validity.

In the *Jameson Case,* plaintiff when injured, seriously as is undisputed, was working in a responsible position as foreman for defendant at certain pile-driving operations and was an expert in that line, with long experience in the construction and operation of derricks and other machinery essential to such work. There was evidence that his work in that capacity included repairing pile drivers and other equipment requiring strength and agility in high and dangerous places, with a steady and clear head, for resumption of which his injuries totally and permanently incapacitated him. His subsequent employment was of a different character. Following the *Foley Case,* it was held that there was testimony to support the board's order and it would not be disturbed.

As the instant case now stands on the undisputed testimony the findings of the board essential to the validity of its order is without evidential support. We think the *Miller Case* controlling and the order appealed from must be set aside. Certain of the views expressed by the board in that case as to the uncertainty of plaintiff's future condition and his possible

part or total disability to work as a common laborer in the near future seem somewhat pertinent here. No final order has been made by the board and on remission of the case it yet has jurisdiction.

The order will be set aside without costs to either party, and the case remanded for such further review of the original award, in harmony with this opinion, as parties may apply for and future conditions warrant under the statute.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.