## KLING v. NATIONAL CANDY CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CERTIORARI—QUESTIONS REVIEWABLE—NATURE OF EMPLOYMENT.

On certiorari to review an order of the industrial accident board refusing to grant employer's petition for an order discontinuing payments to an injured employee, the finding of the board that at the time of the accident plaintiff was in an "employment" is reviewable by this court.

2. SAME—COMMON LABOR—ABILITY TO EARN.

Where the order of the board was based upon the finding that plaintiff was, at the time of the accident, engaged in an "employment," and that he is unable to follow the same by reason of his injuries, but said finding has no evidential support in the record, but on the contrary it clearly appears that plaintiff's occupation was that of a common laborer, and that he is now able to earn a much larger sum in the same factory at common labor than he was earning at the time of his injury, said order will be set aside.

Certiorari to Industrial Accident Board. Submitted October 13, 1920. (Docket No. 18.) Decided December 21, 1920.

Arthur R. Kling presented his claim for compensation against the National Candy Company for injuries received in defendant's employ. From an order denying a petition for a discontinuance of payments under an award, defendant and the Ætna Life Insurance Company, insurer, bring certiorari. Reversed, and order set aside.

*Travis, Merrick, Warner & Johnson,* for appellants.
*Willis B. Perkins, Jr.,* for appellee.

BROOKE, J. Certiorari to the industrial accident

On amount of recovery by incapacitated employee under workmen's compensation act, see notes in L. R. A. 1916A, 136, 254; L. R. A. 1917D. 167.

board. The plaintiff, at that time a young man of 17 who had completed his third year in high school, was employed during vacation on August 7, 1917, by the defendant and set to work running a lozenge mixer. This machine was about 5 feet long, 3 feet wide and 18 to 20 inches deep and its base stood about 2 feet from the floor. On the inside of this trough-like box two spiral screws about 10 inches in diameter revolved slowly (20 to 22 revolutions per minute) in opposite directions. Into this receptacle several hundred pounds of sugar, a certain quantity of glucose, gum, coloring matter and flavoring matter were dumped and the machine set in motion. It required about 15 minutes of operation to so mix the composition as to render it ready for the next operation. It then became the duty of the operator to remove the mixture from the machine. It is the claim of the plaintiff (denied by the defendant) that he was never instructed to stop the machine for this operation and that he and the other operators on like machines habitually and necessarily—if the work was to be performed with celerity—took the candy dough from the machine while it was in operation. Whatever the facts may be with reference to his instructions, on the 28th of August (after he had been at work on the machine exactly three weeks) plaintiff, in endeavoring to remove some small pieces of dough from the lower part of the machine with his left hand, was caught and that member was quite severely lacerated and crushed.

In the first report of the accident to the industrial accident board, as well as in the second report, the following appears:

"Occupation of injured employee—candy mixer." On February 16, 1918, an agreement was entered into for compensation at the rate of $6.50 per week during total disability and at the proper rate per week dur-

ing partial disability, if disability should become partial. At the time of his injury plaintiff was receiving $13 per week, which was about the average paid for such labor in defendant's factory at the time. Plaintiff's hand healed substantially within four months after the accident, but his injury resulted in a loss of a portion of his index finger, some loss of motion of the third and fourth fingers and the stiffening of the little finger—taken together, quite materially reducing the efficiency of the left hand.

Compensation was paid under the agreement without question until July 15, 1919, a period of 98 weeks. About this time the agent for the insurance company carrying the risk inquired of the employing defendant whether employment could be furnished plaintiff, and if so, at what wage. Being advised in the affirmative, a letter was written to plaintiff on July 8th, advising him of the fact that he could secure employment with his former employer at a larger wage than he was receiving at the time of his injury. Plaintiff, however, was at this time attending Junior College in the city of Grand Rapids, and he paid no attention to the offer, nor did he seek employment after his injury and recovery therefrom, either with his former employer or elsewhere.

Thereupon defendant filed a petition with the industrial accident board, asking that payment be discontinued. The hearing on said petition was had, at which testimony was taken and an order was ultimately made by the board in the following terms:

"(a) That said applicant has been, since the date of the accident, August 28, 1917, and is at the present time, totally incapacitated for work in the employment in which he was engaged at the time of the accident, viz., that of a candy mixer.

"(b) That compensation should be continued from the time payments thereof were stopped, July 15,

212—Mich.—11.

1919, during applicant's period of disability resulting from the accident, in accordance with the terms of the agreement in regard to compensation approved by the board on March 29, 1918.

"It is, therefore, ordered and adjudged, that said petition should be and the same is hereby denied, and that said applicant is entitled to receive and recover from said respondents compensation from the end of the period covered by the last payment thereof, July 15, 1919, up to and including December 19, 1919, the date of hearing herein, a period of 22½ weeks, making a total amount of one hundred forty-six dollars and twenty-five cents ($146.25), which shall be paid forthwith and receipt therefor filed with the board, and that subsequent to the last mentioned date compensation shall continue in the case in accordance with the terms of the approved agreement and the provisions of the workmen's compensation act."

This order is now reviewed in this court upon writ of certiorari.

The sole question for determination upon this record is whether the board was justified in holding that plaintiff was entitled to compensation because of his total incapacity "for work in employment in which he was engaged at the time of the accident, namely, that of a candy mixer." As bearing upon the character of the work in which the plaintiff was engaged at the time of his injury, the following testimony of defendant's superintendent was introduced by defendant:

"*Q.* What did he work at while he was there, Mr. Schroth?

"*A.* At mixing lozenges.

"*Q.* Whether or not you would call that skilled labor?

"*A.* Not necessarily.

"*Q.* Why not?

"*A.* Well, for the reason that we can take almost any ordinary man and have him in position to mix these goods within practically a week or two weeks' time.

"*Q.* As I understand it you would denominate it as common labor?

"*A.* I would, yes.    *   *   *

"*Q.* Whether or not you would say it takes a man of some particular intelligence to run a machine of that kind?

"*A.* Why, I wouldn't say it takes a man of any intelligence to run it, no.

"*Mr. Perkins* (counsel for plaintiff) : Objected to as leading.

"*Q.* Couldn't you put most any man, or couldn't you put any of your men on this machine and do the work?

"*Mr. Perkins:* That question does not really ask a question.   I object to it as being double.

"*Q.* Whether or not, so long as you have observed it, they have been able to do the work?

"*A.* Yes, we have done it.

"*Q.* Whether or not you would claim that working on a machine of that kind is an employment in itself, that is what I mean.   I will explain my question. Certain men are known as electricians, other men as moulders, other men as machinists, skilled machinists. Would you term a man working on a machine like that—would he have learned anything in particular that he can follow as a trade?

"*A.* No, he wouldn't."

And on cross-examination:

"*Q.* In answer to Mr. Kelley's question here a moment ago with regard to electricians, and so forth, if I understand you correctly what you mean is a man has not learned a specific trade there in a period of two weeks that he learns to run that machine, that is what you mean by answering that question?

"*A.* Well, I took his question to mean, would it make him a skilled man in any profession, which I don't think it would.

"*Q.* That is whether he had learned a trade in that period of time?

"*A.* Because he really in that period of time, or a longer period, wouldn't learn the trade, because there is more attached to it."

And on re-direct:

"*Q.* Whether or not Mr. Kling was what is known as a helper at the time he was injured?

"*A.* Well, we term them all practically as helpers, but designated some of them in different positions, such as this would be, we would term this a mixer. We have that, and then I would say in another department we would call a man a machine runner or something like that, you see. Still, when it is all summed up they are classed about the same as helpers. Our business is really different than some others. We have as a rule one man in charge of a department, who is the candy maker of a department; he requires this help to turn out the output.

"*Q.* Whether or not you would say he is the only skilled man that you had in this department?

"*A.* Well, now I—we usually have one skilled man and another man who is learning or beginning so that he will be a good man to fall back on, and a second man to take the place of the other man if something should happen to him, so we wouldn't have in any of the departments much over two men that we could term as skilled.

"*Q.* All the other men in this department are simply common laborers?

"*A.* They are."

And no evidence was introduced on the part of the plaintiff to the contrary.

Plaintiff lays stress upon the fact that in the two reports of the accident the defendant employer used the language, "Occupation of injured employee— candy mixer"; and the further fact that, under the evidence, from one to two weeks' training was required to enable plaintiff to properly perform his duties as such mixer. It is the further claim of counsel for plaintiff that the board's finding that plaintiff was at the time of the accident in an "employment," namely, that of candy mixer, is a finding of fact and therefore not reviewable in this court under our authorities. We are of the opinion that counsel overlooks our decision in the case of *Leitz* v. *Labadie*

*Ice Co.*, 211 Mich. 565, where this identical question arose, and the finding of the board was reversed. As has been noted by this court in *Miller* v. *Fair & Sons*, 206 Mich. 360, and *Leitz* v. *Labadie Ice Co., supra*, the question presented is not without difficulty. In the latter case, speaking through Mr. Justice STEERE, we said:

"While, as suggested in that opinion, an exact definition of common labor, exclusive and inclusive, is not readily formulated, we think it may safely be said that, as generally used and understood, it signifies that kind of unskilled manual labor with or without simple tools, which is commonly done by the masses of working people in lines of employment necessitating no special trade or previous training before engaging in them beyond what can be quickly learned and effectually performed by the laborer while employed at regular wage under direction of those in charge; as distinguished from that class of skilled and less common manual labor to perform which previous experience, apprenticeship, study, practice or manual training in some special calling, handicraft or trade is required."

In the case at bar, it is uncontradicted that plaintiff is now able, if willing, to earn a sum much larger than that of which he was in receipt at the time of the accident at what may be denominated "common labor" in the factory in which he was employed; and we are constrained to hold, under the evidence quoted, that his employment at the time of the accident was in the nature of common labor and therefore that the order of the board finds no evidential support in the record. The cases of *Foley* v. *Railway*, 190 Mich. 507, and *Jameson* v. *Walter S. Newhall Co.*, 200 Mich. 514, relied upon by plaintiff, have been considered, but in our opinion are not controlling.

The order of the board must be set aside.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.