LEITZ v. LABADIE ICE CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—TOTAL DIS-
ABILITY TO BE TESTED BY ABILITY TO WORK AT SAME CLASS OF
EMPLOYMENT AS WHEN INJURED.

> Where there was sufficient testimony to support the find-
> ing of the department of labor and industry that plaintiff
> was totally incapacitated to perform common labor, at
> which he was employed at the time he was injured, the
> award of the department of labor and industry for total
> disability under the workmen's compensation act must
> be affirmed notwithstanding the fact that plaintiff is now
> earning as a bookkeeper and accountant more than he
> was earning at the time of his injury, since, under the
> act, his right to compensation is to be tested by his ability
> to work and earn wages in the same class of employment
> as that in which he was engaged when injured.[1]

Certiorari to Department of Labor and Industry.
Submitted December 5, 1924.   (Docket No. 79.)   De-
cided December 31, 1924.

Carl Leitz presented his claim for compensation
against the Labadie Ice Company for an accidental in-
jury in defendant's employ.   From an order denying a
petition for discontinuance of payments under an
award, defendant and the Standard Accident Insurance
Company, insurer, bring certiorari.   Affirmed.

*Lightner, Oxtoby, Hanley & Crawford,* for appel-
lants.

*Thomas, Shields & Silsbee,* for appellee.

STEERE, J.   Defendants appeal from an order of the
commission of the department of labor and industry
dated April 30, 1924, finding the plaintiff "entitled at

[1]Workmen's Compensation Acts, § 83.
   On the question of consideration of possible earnings of injured
employee in other employment, in fixing compensation under
compensation acts, see note in L. R. A. 1916A, 377.
   On inability to obtain work because of an injury, see note in
33 A. L. R. 115.

the present time to receive compensation at the rate of $6.78 per week from December 11, 1923, to and including April 30, 1924, or the sum of $136.73, and in the future not to exceed 500 weeks from the date of the accident."

Leitz was injured February 2, 1917, while employed as a common laborer by the Labadie Ice Company at a wage of $3 per day.  He was working on an ice slide which broke and let him fall some 15 feet and a block or blocks of ice falling with him struck on and so severely injured his left hip that he was permanently crippled, thereafter walking with crutches, and was unable to do any work for about two years when he finally secured employment in a factory running a punch press, at which he could work while sitting, but which was unskilled or common labor.

At the time of the accident proper proceedings for compensation were taken under the workmen's compensation law and he was awarded $6.78 per week for total disability which defendants regularly paid from the date of the accident, February 2, 1917, until December, 1919, and then applied to the compensation board for release on the ground that he had recovered from his incapacity to perform common labor and at that time was earning in that class of employment more wages than he was receiving at the time of his injury.  The case came before this court for review and under the undisputed facts there shown defendants' contention was sustained (*Leitz* v. *Labadie Ice Co.*, 211 Mich. 565).

After that case was handed down, on September 30, 1920, and remanded with authority for the board to take such further action as future conditions might warrant under a proper showing, plaintiff filed a petition for further compensation on the ground of total disability, claiming that by reason of his accident he could no longer continue to do the work in which he was engaged at the time the former hearing was

had nor in a condition to do any other kind of common labor. After hearing parties on this petition the board found that plaintiff had been engaged at common labor earning greater wages than before his injury during a portion of the time he was receiving compensation for total disability, that compensation should have been suspended for the time he was so employed which advanced the period during which it had been properly paid to February 1, 1921, and on January 14, 1921, ordered—

"That subsequent to February 1, 1921, applicant should be paid compensation at the rate of six and 78-100 dollars ($6.78) per week during the period of his total disability; and at the rate of fifty per cent. of the difference between the average weekly wages he was earning at the time of the accident and the average weekly wages he is able to earn thereafter in the employment in which he was engaged when injured, during any partial disability he may suffer in the future." * * *

In compliance with such order defendants continued to pay plaintiff $6.78 weekly until December 18, 1923, at which time the total payments made him amounted to $2,027.23, and they then tendered him $6.78 more as final payment for partial disability for 300 weeks, apparently on the reference in the order to "partial disability he may suffer in the future," which plaintiff refused to accept and receipt for as a final payment.

Thereupon defendants applied for an order permitting them to discontinue further payments. After hearing the evidence offered the commission of the department of labor and industry (formerly industrial accident board) made the order of April 30, 1924, on the basis of total disability, continuing the compensation of $6.78 per week from December 11, 1923, the time when defendants stopped payment, for 500 weeks from the date of the accident, or the maximum time allowed by the act for total disability.

We see no significance in the reference to *partial disability* interjected into the order made by the board on January 14, 1921. The award of $6.78 per week made at the time of the accident was for total disability and no change was made thereafter except elimination of the time plaintiff was earning full wages as a common laborer. His claim throughout was total disability to work at any kind of common labor, which was the class of labor in which he was employed at the time of the accident and while compensation was suspended by advancing the period of credited payments.

It was shown that, when defendants made this last application for relief from further payments, plaintiff was and had been for some time employed in a bank as a bookkeeper and accountant earning $25 per week, having qualified for this class of employment by attending the Ferris Institute as a student and by taking a correspondence course.

Under the act an injured employee's right to compensation is to be tested by his ability to work and earn wages in the same class of employment as that in which he was engaged when injured. The various phases of that question have been too fully reviewed and settled in previous decisions of this court to require further discussion. *Foley* v. *Railway,* 190 Mich. 507; *Jameson* v. *Newhall Co.,* 200 Mich. 514; *Miller* v. *Fair & Sons,* 206 Mich. 360; *Leitz* v. *Labadie Ice Co.,* 211 Mich. 565; *Woodcock* v. *Dodge Bros.,* 213 Mich. 233 (17 A. L. R. 203). In the latter case it is said:

"Of course, the fact that he (claimant) received more wages since the injury would not preclude him from getting additional compensation if it were also shown that he had since been unable by reason of his injury, to follow the particular employment he was engaged in when injured."

In *Foley* v. *Railway, supra,* while recognizing that the test required by the statute was the ability to work

and earn wages in the same class of employment as that in which the employee was injured, this court said:

"That under this rule instances may arise where it works inequitably, does not authorize the court to read exceptions into it or modify its plain language defining the basis for estimating incapacity, which at best can only be approximated. If the method ought to be changed or exceptional cases provided for, the remedy rests with the legislature."

Whether plaintiff was totally incapacitated as a result of his accidental injury from earning wages in the class of employment in which he was engaged when injured is the controlling question in the case, which was one of fact for the commission to decide, if there was competent testimony before it that he was not.

Counsel for defendants contend in their brief—referring to *Leitz* v. *Labadie Ice Co., supra*—that "The only additional facts which appear in the record are that plaintiff decided that he would prefer clerical work to that of manual labor," and urge that his physical condition is now no worse than it was in 1920 at the time the case was here before, when it was shown he was working at common labor, earning larger wages than when injured, and at the same time drawing compensation for total disability, which left no opportunity for the contention that he could not do so. When this case was heard he was doing clerical work in an entirely different class of employment, and testified that he was obliged to leave the Auto Body Company where he worked the longest because in his crippled condition he could not stand the work and they discharged him. "because I wasn't an all-round man and couldn't perform the labor there," and that he quit the Reo Company where he was last employed at manual labor, because he couldn't keep up and "couldn't stand it." He further testified that he

229—Mich.—25.

made efforts to get work at different places but could not do so on account of his physical disability, and repeatedly asserted that in his crippled condition, being on crutches ever since his injury, he was totally unable to effectually work and earn wages at any kind of common or unskilled labor.

Counsel for defendants particularly stress the testimony of plaintiff's physician who testified as to his condition at the former hearing, and when asked in this case, "Then if he was able to do a punch press job during 1920 under conditions that existed then, if those conditions existed today he would be able to perform that same work?" he replied, "I don't see any reason why he shouldn't." The doctor also described his crippled condition, said it was "necessary for him to use crutches at all times," that when he walked any distance his left leg trembled from the hip down, he was treating him at the present time and his leg was not growing any stronger—had not in his opinion "gotten any worse or any better." There, however, was sufficient conflict of testimony as to plaintiff's disability to perform any kind of common labor to raise a question of fact and, as often noted, the compensation act makes the findings of fact by the commission conclusive when there is any competent testimony to support its findings.

The award will stand affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.